Thomas H. Allen, State Bar #11160
Philip J. Giles, State Bar #30340
David B. Nelson, State Bar #34100
**ALLEN BARNES & JONES, PLC**
1850 N. Central Ave., Suite 1150
Phoenix, Arizona 85004
Ofc: (602) 256-6000
Fax: (602) 252-4712
Email: tallen@allenbarneslaw.com
        cvandewerker@allenbarneslaw.com

Attorneys for Debtors

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 |
| PHILLIP J. HOOLEHAN and NICOLE M. HOOLEHAN, | Case No.: 2:18-bk-13152-EPB |
| Debtors. | **DEBTORS' PLAN OF REORGANIZATION DATED MARCH 5, 2019** |

## <u>INTRODUCTION</u>

Phillip J. Hoolehan and Nicole M. Hoolehan (the "Debtors"), and debtors-in-possession in the above-captioned Chapter 11 case, hereby files this *Plan of Reorganization Dated January 5, 2019*. In addition to reviewing this Plan, all creditors and parties in interest are encouraged to consult the Disclosure Statement before voting to accept or reject this Plan. **NO SOLICITATION MATERIALS OTHER THAN THE DISCLOSURE STATEMENT AND RELATED MATERIALS TRANSMITTED THEREWITH HAVE BEEN APPROVED OR AUTHORIZED BY THE BANKRUPTCY COURT IN SOLICITING ACCEPTANCES OR REJECTIONS OF THIS PLAN.**

{00149342}

# TABLE OF CONTENTS

**ARTICLE 1 – DEFINITIONS**     **6**

**1.1**     **AB&J**     **6**

**This term means Allen Barnes & Jones PLC.**     **6**

**1.2**     **Administrative Claim**     **6**

**1.3**     **Allowed Claim**     **6**

**1.4**     **ADOR**     **7**

**1.5**     **Ballot**     **7**

**1.6**     **Bankruptcy Code or Code**     **7**

**1.7**     **Bankruptcy Court or Court**     **7**

**1.8**     **Bankruptcy Rules or Rules**     **7**

**1.9**     **Business Day**     **7**

**1.10**     **Capital One**     **7**

**1.11**     **Chapter 11 Case or Case**     **7**

**1.12**     **Chapter 11 Professionals**     **8**

**1.13**     **Claim**     **8**

**1.14**     **Claimant**     **8**

**1.15**     **Class**     **8**

**1.16**     **Confirmation Date**     **8**

**1.17**     **Confirmation Hearing**     **8**

**1.18**     **Confirmation Order**     **8**

**1.19**     **Creditor**     **8**

**1.20**     **Debtors**     **8**

**1.21**     **Disclosure Statement**     **8**

**1.22**     **Disputed Claim**     **8**

**1.23**     **Effective Date**     **9**

**1.24**     **Estate**     **9**

| | | | |
|---|---|---|---|
| 1 | **1.25** | **Executory Contract** | **9** |
| 2 | **1.26** | **Final Bar Date** | **9** |
| 3 | **1.27** | **Final Decree** | **9** |
| 4 | **1.28** | **Final Order** | **9** |
| 5 | **1.29** | **General Unsecured Claim** | **9** |
| 6 | **1.30** | **IDOR** | **9** |
| 7 | **1.31** | **Impaired** | **10** |
| 8 | **1.32** | **Initial Bar Date** | **10** |
| 9 | **1.33** | **Initial Payment Date** | **10** |
| 10 | **1.34** | **IRS** | **10** |
| 11 | **1.35** | **Litigation** | **10** |
| 12 | **1.36** | **New Value** | **10** |
| 13 | **1.37** | **Person** | **10** |
| 14 | **1.38** | **Petition Date** | **10** |
| 15 | **1.39** | **Plan** | **10** |
| 16 | **1.40** | **Priority Tax Claim** | **10** |
| 17 | **1.41** | **Professional Fees** | **10** |
| 18 | **1.42** | **Property** | **10** |
| 19 | **1.43** | **Santander** | **11** |
| 20 | **1.44** | **Secured Claim** | **11** |
| 21 | **1.45** | **Secured Creditor** | **11** |
| 22 | **1.46** | **Unsecured Claim** | **11** |
| 23 | **1.47** | **Unsecured Creditor** | **11** |
| 24 | **ARTICLE 2 – IMPORTANT DATES & DEADLINES** | | **11** |
| 25 | **2.1** | **Initial Bar Date** | **11** |
| 26 | **2.2** | **Final Bar Date** | **12** |
| 27 | **2.3** | **Claims Objection Deadline.** | **12** |
| 28 | **2.4** | **Deadline for Assumption or Rejection of Executory Contracts** | **12** |

| | | |
|---|---|---|
| **ARTICLE 3 - CLASSIFICATION AND TREAMENT OF CLAIMS** | | **13** |
| **3.1** | **Unclassified Claims** | **13** |
| **3.1.1** | **Allowed Administrative Claims** | **13** |
| **3.1.2** | **Allowed Priority Tax Claim of the IRS** | **13** |
| **3.2** | **Class I(a) – Secured Claim of Santander** | **15** |
| **3.3** | **Class I(b) – Secured Claim of Capital One** | **15** |
| **3.4** | **Class I(c) – Secured Claim of IRS** | **15** |
| **3.5** | **Class II – General Unsecured Creditors** | **16** |
| **ARTICLE 4 - PLAN IMPLEMENTATION** | | **16** |
| **ARTICLE 5 - VOTING PROCEDURE** | | **17** |
| **ARTICLE 6 - BINDING EFFECT OF PLAN** | | **17** |
| **ARTICLE 7 - EFFECT OF CONFIRMATION** | | **17** |
| **ARTICLE 8 - MODIFICATION OF PLAN** | | **18** |
| **8.1** | **Pre-Confirmation** | **18** |
| **8.2** | **Post-Confirmation** | **18** |
| **8.3** | **Effect of Modification** | **18** |
| **ARTICLE 9 - RETENTION OF JURISDICTION** | | **19** |
| **ARTICLE 10 - RETENTION AND PROSECUTION OF CLAIMS** | | **19** |
| **10.1** | **Preservation of Debtors' Claims, Demands, and Causes of Action** | **19** |
| **10.2** | **Procedure for Determination of Claims** | **20** |
| **10.2.1** | **Disputed Claims** | **20** |
| **10.2.2** | **Treatment of Contingent Claims** | **20** |
| **ARTICLE 11 - PROVISIONS GOVERNING DISTRIBUTIONS** | | **20** |
| **11.1** | **Distributions by the Debtors** | **20** |
| **11.2** | **Date of Distributions** | **20** |
| **11.3** | **Delivery of Distributions** | **21** |
| **11.4** | **Means of Payment** | **21** |
| **11.5** | **De Minimis Cash Distributions** | **21** |

| | | |
|---|---|---:|
| **11.6** | **Setoff** | **21** |
| **ARTICLE 12 - GENERAL PROVISIONS** | | **22** |
| **12.1** | **Extension of Dates** | **22** |
| **12.2** | **Notices** | **22** |
| **12.3** | **Default** | **22** |
| **12.4** | **Closure of the Case** | **22** |
| **12.5** | **Effect of Appeal** | **22** |
| **12.6** | **Exculpation and Limitation of Liability** | **23** |
| **12.7** | **General Injunction** | **23** |
| **12.8** | **Interest** | **23** |
| **12.9** | **Additional Assurances** | **24** |
| **12.10** | **Confirmation by Non-Acceptance Method** | **24** |
| **12.11** | **Vesting** | **24** |
| **12.12** | **Successors and Assigns** | **24** |
| **12.13** | **Withdrawal of Plan** | **24** |
| **12.14** | **Severability and Reformation** | **24** |
| **12.15** | **Prohibition Against Prepayment Penalties** | **25** |
| **12.16** | **Payment of Statutory Fees and Filing of Quarterly Reports** | **25** |
| **12.17** | **Governing Law** | **25** |
| **12.18** | **Special Tax Issues** | **25** |
| **12.19** | **Conflicts Between Plan and Confirmation Order** | **25** |

# ARTICLE 1 – DEFINITIONS

**Rules of Construction**   The following terms shall have the meanings specified below when used in this Plan. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neutral gender shall include the masculine, the feminine, and the neutral.  The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan.  Unless otherwise specified, all section, schedule, or exhibit references in the Plan are to the respective section in, schedule to, or exhibit to the Plan.  The headings in the Plan are for convenience only and shall not limit or otherwise affect the provisions of the Plan.  The rules of construction contained in Code § 102 shall apply to the construction of the Plan, and unless specifically modified herein, terms that are defined by the Bankruptcy Code shall have the same meanings defined by the Code, or, if not defined therein, their ordinary meanings.   These definitions are a substantial and operative part of the Plan.

## 1.1   AB&J

This term means Allen Barnes & Jones PLC.

## 1.2   Administrative Claim

This term means every cost or expense of administration of this Case allowed under Code § 503(b) and referred to in Code § 507(a)(1), including, without limitation: a) any actual and necessary expense of preserving the Estate as approved by the Bankruptcy Court; b) all Professional Fees; and c) all fees and charges assessed against the Debtors' Estate under 28 U.S.C. § 1930.

## 1.3   Allowed Claim

This term means every Claim: (a) (i) as to which a proof of such Claim has been timely filed pursuant to Sections 2.1 or 2.2 below, or (ii) which the Debtors have scheduled in their Schedules (including any amendments thereto) as liquidated in amount, not contingent, and undisputed; and in either event:  (b) (i) as to which no objection to the allowance of such Claim has been filed within any applicable time period fixed by the Bankruptcy Court, or (ii) as to

which the order allowing such Claim has become a Final Order. The term "Allowed Claim" may be used throughout the Plan with each of the various Creditors' Claims or Classes of those Claims (*e.g.*, "Allowed Administrative Claims" or "Allowed Secured Claims") to signify that such Claims are, will be, or must be Allowed Claims to qualify for certain treatment under the Plan.

### 1.4    ADOR

This term means the Arizona Department of Revenue.

### 1.5    Ballot

This term means the Ballot for accepting or rejecting the Plan, which will be distributed to holders of Claims in Classes that are Impaired and entitled to vote on this Plan.

### 1.6    Bankruptcy Code or Code

These terms mean Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq., as now existing or hereafter amended during this Case.

### 1.7    Bankruptcy Court or Court

These terms mean the United States Bankruptcy Court for the District of Arizona, Phoenix Division, or any other court that exercises jurisdiction over all or part of the Case, including the United States District for the District of Arizona to the extent that the reference of all or part of the Case is withdrawn.

### 1.8    Bankruptcy Rules or Rules

This term means the Federal Rules of Bankruptcy Procedure promulgated under 28 U.S.C. § 2075 and the local rules of Court, as applicable during the term of the Case.

### 1.9    Business Day

This term means every day except Saturdays, Sundays, and holidays observed by the Bankruptcy Court.

### 1.10    Capital One

This term means Capital One Auto Finance

### 1.11    Chapter 11 Case or Case

This term means Case No. 2:18-bk-13152-EPB.

### 1.12 Chapter 11 Professionals

This term means all professionals employed by the Estate under Code § 327.

### 1.13 Claim

This term means "claim" as defined in Code § 101(5).

### 1.14 Claimant

This term means the holder of a Claim.

### 1.15 Class

This term means each of the categories of classified claims described in Article 3 of the Plan.

### 1.16 Confirmation Date

This term means the date on which the Bankruptcy Court enters the Confirmation Order.

### 1.17 Confirmation Hearing

This term means the hearing regarding confirmation of the Plan conducted by the Bankruptcy Court pursuant to Code § 1128, including any adjournment or continuation of that hearing from time to time.

### 1.18 Confirmation Order

This term means the order of the Bankruptcy Court confirming the Plan pursuant to Code § 1129.

### 1.19 Creditor

This term means "creditor" as defined in Code § 101(10).

### 1.20 Debtors

This term means Phillip J. Hoolehan and Nicole M. Hoolehan.

### 1.21 Disclosure Statement

This term means the *Debtors' Disclosure Statement Dated March 5, 2019*, presented by the Debtors with respect to the Plan, in its present form or as it may be altered, amended, or modified.

### 1.22 Disputed Claim

This term means every Claim: a) that is scheduled by the Debtors as disputed,

contingent, or unliquidated; or b) that is not an Allowed Claim. Where performance is to be rendered under the Plan to any Creditor in respect to a Disputed Claim, such performance shall not be due (notwithstanding the occurrence of the Effective Date for all other purposes and legal effects) unless and until such Disputed Claim becomes, wholly or in part, an Allowed Claim.

**1.23   Effective Date**

This term means the thirtieth day that occurs after the Confirmation Date.

**1.24   Estate**

This term means the Debtors' bankruptcy estate created under Code § 541.

**1.25   Executory Contract**

This term means every unexpired lease and other contract that is subject to being assumed or rejected under Code § 365.

**1.26   Final Bar Date**

This term means the thirtieth day that occurs after the Effective Date.

**1.27   Final Decree**

This term means a Final Order showing that the Plan has been fully administered.

**1.28   Final Order**

This term means an order or judgment of the Court that a) shall not have been reversed, stayed, modified or amended and the time to appeal from, or to seek review or rehearing of, shall have expired and as to which no appeal or petition for review, or hearing for *certiorari* is pending, or b) if appealed from, shall have been affirmed and no further hearing, appeal, or petition for *certiorari* can be taken or granted.

**1.29   General Unsecured Claim**

This term means every Unsecured Claim against the Debtors (including, but not limited to, every such Claim arising from the rejection of an Executory Contract, deficiencies related to Secured Claims of Creditors, and Unsecured Claims of Creditors with Claims solely against the Debtors) that will be classified and paid under the Plan as the Plan provides for Class II Claims.

**1.30   IDOR**

This term means the Illinois Department of Revenue.

**1.31**   **Impaired**

This term means "impaired" as defined in Code § 1124.

**1.32**   **Initial Bar Date**

This term means the day prior to the date of the first hearing on the Disclosure Statement.

**1.33**   **Initial Payment Date**

This term means the first day of the month that occurs 11 months after the Effective Date.

**1.34**   **IRS**

This term means the Internal Revenue Service.

**1.35**   **Litigation**

This term means any potential causes of action belonging to the estate, including but not limited to those arising from the events described in Article 2 of the Disclosure Statement.

**1.36**   **New Value**

This term means the contribution of $7,500 by a third-party to the Debtors to be applied towards implementation of this Plan.

**1.37**   **Person**

This term means "person" as defined in Code § 101(41).

**1.38**   **Petition Date**

This term means October 26. 2018, the filing date of the Debtors' voluntary Chapter 11 petition.

**1.39**   **Plan**

This term means this *Debtors' Plan of Reorganization Dated January 8, 2019* and every amendment to or modification thereof, if any.

**1.40**   **Priority Tax Claim**

Any Claim of a governmental unit entitled to priority under Code § 507(a)(8).

**1.41**   **Professional Fees**

This term means any of the interim and final professional fees, costs, and expenses charged by the Chapter 11 Professionals.

**1.42**   **Property**

This term means, with respect to the Debtors, all rights, causes of action, all of the right, title and interest in and to Property (real or personal, tangible or intangible, legal or equitable, liquidated or unliquidated) of whatever type or nature, owned by the Debtors as of the Effective Date, together with Property subsequently acquired by the Debtors, and including, but not limited to, Property as defined in Code § 541.

### 1.43    Santander

This term means Santander Consumer USA Inc.

### 1.44    Secured Claim

This term means every Claim or portion thereof that is asserted by a Creditor holding such Claim to be secured by a lien, security interest, or assignment encumbering Property in which the Debtors have an interest; provided, however, that such Claim shall be a Secured Claim only to the extent of the validity, perfection, and enforceability of the claimed lien, security interest, or assignment and only to the extent of the value of the interest of the Creditor holding such Claim against such Property.

### 1.45    Secured Creditor

This term means every Creditor that asserts a Secured Claim in the Bankruptcy Case.

### 1.46    Unsecured Claim

This term means all Claims asserted by Creditors of the Debtors, including deficiency Claims, dissolution Claims and Claims arising out of the rejection of Executory Contracts, other than Secured Claims, Administrative Claims, and Priority Tax Claims.

### 1.47    Unsecured Creditor

This term means the owner or holder of an Unsecured Claim.

## ARTICLE 2 – IMPORTANT DATES & DEADLINES

### 2.1    Initial Bar Date

The Court originally set a hearing for _____ at 230 N. First Avenue, ___ Floor, Courtroom _____, Phoenix, Arizona, to consider the adequacy of the Debtors' initial disclosure statement and set the same day as the Initial Bar Date for filing proofs of Claim.  For eligibility as Allowed Claims, proofs of Claim must be filed for:

a) Claims not listed in the Schedules of Assets and Liabilities, as may be amended from time to time;

b) Claims that are listed in the Schedules of Assets and Liabilities as disputed, contingent, or unliquidated;

c) Claims that differ in any respect from those listed in the Schedules of Assets and Liabilities (including, without limitation, the assertion of any right to a setoff under Code § 553 or otherwise);

d) Administrative Claims arising prior to the Initial Bar Date, except for Professional Fees; and

e) Claims arising from the Debtors' rejection of an Executory Contract that occurs prior to the Bar Date.

Any Person or entity asserting one of the foregoing types of Claims that failed to timely file a proof of Claim or application for payment thereof prior to Initial Bar Date is deemed to have waived its Claim, and the Claim will be disallowed and forever barred.

### 2.2 Final Bar Date

Applications for allowance and payment of a) Administrative Claims that arise after the Initial Bar Date b) Professional Fees incurred prior to the Confirmation Date, or c) Claims resulting from the Debtors' rejection of Executory Contracts after the Initial Bar Date must be filed no later than the Final Bar Date. Any Person asserting one of the foregoing types of Claims that fails to timely file a proof of Claim or application for allowance and payment thereof shall be deemed to have waived its Claim, and the Claim will be disallowed. Any Professional Fees incurred after the Confirmation Date shall be payable in the normal course of the Debtors' affairs without the need to seek or obtain Bankruptcy Court approval.

### 2.3 Claims Objection Deadline.

On or before the sixtieth day after the Effective Date, the Debtors or any party in interest may file with the Bankruptcy Court, serving a copy upon Debtors' counsel, if necessary, an objection to any application for approval of an Administrative Claim or proof of Claim filed, or deemed filed herein.

### 2.4 Deadline for Assumption or Rejection of Executory Contracts

Prior to the Confirmation Date, the Debtors will file motions to assume or reject all Executory Contracts. Any Executory Contract not assumed prior to the Confirmation Date will

be deemed rejected.

ARTICLE 3 - CLASSIFICATION AND TREAMENT OF CLAIMS

This Plan defines various Classes of Claims and provides for their treatment.  This Plan deals with all Claims against the Debtors of whatever character.   Only Allowed Claims are entitled to receive payments under the Plan. In accordance with Code §§ 1122 and 1123, all Claims against the Debtors or the Estate are classified and will receive treatment as follows:

### 3.1    Unclassified Claims

Pursuant to Code § 1123(a)(1), Administrative Claims and Priority Tax Claims are not classified for purposes of voting on, or receiving distributions under, the Plan.  Holders of Administrative Claims and Priority Tax Claims are not entitled to vote on the Plan, but rather, are treated separately as set forth in Sections 3.1 of the Plan and summarized herein.

### 3.1.1    Allowed Administrative Claims

This Class includes, without limitation, post-petition tax Claims, Professional Fees, and any fees due and payable to the United States Trustee.  Applications for approval of Administrative Claims must be filed with the Court, and copies must be served upon Debtors' counsel, unless exempted from such requirement.  Any holder of an Administrative Claim that fails to timely file a final application for approval of such Administrative Claim shall be deemed to have waived its Claim, and the Claim will be disallowed.   The holders of Allowed Administrative Claims shall be paid in full on the Effective Date unless otherwise agreed.

### 3.1.2    Allowed Priority Tax Claim of the IRS

The Allowed Priority Tax Claim of the IRS relating to the Debtors' federal tax liability is in the total amount of $175,005.12.  Interest shall accrue on the Priority Tax Claim of the IRS from the Petition Date at the statutory rate set forth in I.R.C. §§ 6621 and 6622 that is in effect as of the Confirmation Date, currently 6.0% compounded daily.

The Debtors shall pay the Allowed Priority Tax Claim of the IRS, including interest accrued from the Petition Date, in full through equal monthly payments beginning on the Effective Date and extending no longer than sixty (60) months of the Petition Date. As of the drafting of the Disclosure Statement, the Debtors estimate the Debtors will pay the Allowed

Case 2:18-bk-13152-EPB    Doc 34    Filed 03/05/19    Entered 03/05/19 10:52:22    Desc
{00149342}                          Main Document          Page 13 of 26

Priority Tax Claim of the IRS in full through fifty-four (54) equal monthly payments of $3,706.06.

In the event the Debtors default on any payment due to the IRS as required under the confirmed Plan, and in the event the Debtors fail to cure said default within thirty (30) days after written notice of the default is mailed to the Debtors and their attorneys, the entire imposed liability together with any unpaid current liabilities, shall become due and payable immediately. The IRS may collect unpaid liabilities that become due as a result of the default through the administrative collection provision or judicial remedies as set forth in the Internal Revenue Code. The IRS shall not be required to seek a modification from the automatic stay to collect any tax liabilities from Property that re-vests with the Debtors. No prepayment penalty shall pertain to this Claim.

The IRS also holds a Class I(c) Secured Claim of $31,519.97 and a Class II Unsecured Claim of $88,090.26.

### 3.1.3    Allowed Priority Tax Claim of the ADOR

The Allowed Priority Tax Claim of the ADOR relating to income taxes is in the total amount of $7,700.57 as of the Petition Date. The Claim shall accrue interest from the Petition Date at the statutory rate set forth in A.R.S. § 42-1123(A), currently 6% compounded annually, that is in effect during the month the Plan is confirmed. The Debtors will pay the Claim, including interest accrued from the Petition Date, through equal monthly payments beginning on the Effective Date and extending no longer than (60) months of the Petition Date. As of the drafting of the Disclosure Statement, the Debtors estimate the Debtors will pay the Allowed Priority Tax Claim of the ADOR in full through in fifty-four (54) equal monthly payments of $163.07 beginning on the Effective Date. No prepayment penalty shall pertain to this Claim.

The ADOR also holds a General Unsecured Claim of $542.03 which shall be treated as a Class II Claim.

### 3.1.4    Allowed Priority Tax Claim of IDOR

The Allowed Priority Tax Claim of the IDOR relating to individual income taxes

1 is in the total amount of $936.78.  The Claim shall accrue interest from the Petition Date at the
2 statutory rate set forth in 35 ILCS § 735/3-2(a), (c) simple interest calculated on a daily basis,
3 currently 6%.    The Debtors will pay the Claim, including interest accrued from the Petition
4 Date, through equal monthly payments beginning on the Effective Date and extending no longer
5 than (60) months of the Petition Date.  As of the drafting of the Disclosure Statement, the
6 Debtors estimate the Debtors will pay the Allowed Priority Tax Claim of the IDIOR in full
7 through fifty-four (54) equal monthly payments of $19.84 beginning on the Effective Date. No
8 prepayment penalty shall pertain to this Claim.

9      The IDOR also holds a General Unsecured Claim of $1,752.61 which shall be
10 treated as a Class II Claim.

11 **3.2    Class I(a) – Secured Claim of Santander**

12 Class I(a) consists solely of the Allowed Secured Claim of Santander attributable to a
13 first-position lien on the Debtors' 2018 Dodge Durango evidenced by lien notation on the
14 vehicle's certificate of title.  Pursuant to Code § 506(a)(1), the Class I(a) Claim is in the total
15 amount of the value of the 2018 Dodge Durango, estimated at $52,818.00 which shall accrue
16 interest at 4%.  Class I(a) shall be paid the full amount of in sixty (60) equal monthly payments
17 of $972.72.  Santander shall retain its lien to the extent of its Class I(a) Claim.  No prepayment
18 penalty shall pertain to this Claim.  Class I(a) is Impaired.

19 **3.3    Class I(b) – Secured Claim of Capital One**

20 Class I(b) consists solely of the Allowed Secured Claim of Capital One attributable to a
21 first-position lien on the Debtors' 2017 Ford Focus  evidenced by lien notation on the vehicle's
22 certificate of title.  Pursuant to Code § 506(a)(1) , the Class I(b) Claim is in the total amount of
23 the value of the 2017 Ford Focus, estimated at $28,310.00, which shall accrue interest at 4%.
24 Class I(b) shall be paid in sixty (60) equal monthly payments of $521.37.  Capital One shall
25 retain its lien to the extent of its Class I(b) Claim.  No prepayment penalty shall pertain to this
26 Claim.  Class I(b) is Impaired.

27 **3.4    Class I(c) – Secured Claim of IRS**

28 Class I(c) consists of the Allowed Secured Claim of the IRS in the amount of

$31,519.97. Holders of the Class I(c) Claim shall receive payment within sixty (60) months of the Effective Date. The Class I(c) Claim shall accrue interest from the Effective Date at the statutory rate set forth in I.R.C. §§ 6621 and 6622, currently 6% compounded daily, that is in effect during the month the Plan is confirmed. No prepayment penalty shall pertain to this Claim. As of the drafting of the Disclosure Statement, the Debtors estimate the Debtors will pay the Allowed Secured IRS claim in full through fifty-four (54) equal monthly payments at $667.49. Any alleged remaining unpaid Claim to the IRS not otherwise receiving treatment in this Plan, including, without limitation, any additional Claims for interest or penalties, shall be enjoined and discharged by the Plan. Class II(c) is Impaired.

In the event the Debtors default on any payment due to the IRS as required under the confirmed Plan, and in the event the Debtors fail to cure said default within 30 days after written notice of the default is mailed to the Debtors and their attorneys, the entire imposed liability together with any unpaid current liabilities, shall become due and payable immediately. The IRS may collect unpaid liabilities that become due as a result of the default through the administrative collection provision or judicial remedies as set forth in the Internal Revenue Code. The IRS shall not be required to seek a modification from the automatic stay to collect any tax liabilities from Property that re-vests with the Debtors.

**3.5    Class II – General Unsecured Creditors**

Class II consists of (i) all Allowed Unsecured Claims that are not entitled to classification in any other Class of Claims; and (ii) any and all deficiency claims. The Debtors shall pay each Class II Claim its pro-rata share of $7,225.16 beginning on the Initial Payment Date and every year thereafter for four years in equal annual installments. No interest shall accrue on the Class II Claims. If a Class II Claim is not an Allowed Claim prior to 30 days after the Effective Date, such Claim will be paid on the one-year payment date that falls after it becomes an Allowed Claim. No prepayment penalty shall pertain to this Claim. Class II is Impaired.

**ARTICLE 4 - PLAN IMPLEMENTATION**

The Debtors will implement the Plan upon entry of the Confirmation Order. Upon the

Effective Date, or at such other time as specifically provided for in the Plan, Creditors holding Allowed Claims will receive the treatment provided for in the Plan. Creditors must hold Allowed Claims before they will be entitled to their respective treatment. On the Effective Date, the Debtors will use third-party assets to make the New Value contribution towards implementation of the Plan.

The Plan will be funded from the Debtors' post-confirmation income. Unless a party in interest objects to the Debtors' estimate of value of any Asset prior to the Confirmation Date, the value of the Assets set forth in the Plan, as amended, shall be determinative.

## ARTICLE 5 - VOTING PROCEDURE

Creditors will vote to accept or reject the Plan. IN GENERAL, THE PLAN CANNOT BE CONFIRMED IF THE PLAN DOES NOT RECEIVE AT LEAST TWO-THIRDS (2/3) IN AMOUNT AND MORE THAN ONE-HALF (1/2) IN NUMBER OF ALLOWED CLAIMS VOTING IN EACH IMPAIRED CLASS. However, if the requisite acceptances are not obtained from one or more Impaired Classes, the Court may nonetheless confirm the Plan pursuant to Code § 1129(b) if one Impaired Class accepts the Plan and the Court finds that the Plan provides, among other things, fair and equitable treatment of the Classes rejecting the Plan and that Creditors receive as much or more under the Plan than they would receive in a Chapter 7 liquidation.

## ARTICLE 6 - BINDING EFFECT OF PLAN

The provisions of this Plan shall bind the Debtors and any Person or entity holding a Claim against the Debtors or their Estate, whether asserted or not asserted, whether such Person or entity's Claim arose before or after the respective Petition Date or the Effective Date, whether or not the Claim is Impaired under the Plan, and whether or not such Person or entity has accepted or rejected the Plan.

## ARTICLE 7 - EFFECT OF CONFIRMATION

Except as otherwise provided herein, the rights afforded in this Plan shall be in exchange for, and in complete satisfaction and release of, all Claims against the Debtors of any nature whatsoever. All holders of Claims against the Debtors shall be precluded from asserting against the Debtors, the Estate, or the Properties of the Debtors or the Estate any other or further Claim based

upon any omission, transaction or other activity of any kind or nature that occurred prior to the Effective Date. This release shall be effective as to each Claim, regardless of whether the Claim is listed on the Debtors' Statements or Schedules filed in this Case, whether a proof of Claim was filed, whether such proof of Claim was withdrawn, whether the Claim is an Allowed Claim, in whole or in part, or whether the holder of the Claim votes to accept or reject this Plan. Upon the Effective Date, all Property of the Estate will vest in the Debtors, who, subject to the obligations set forth in the Plan, may use the Property free of any burdens of the Bankruptcy Code and without need to obtain Court approval of his actions. This release is not a discharge and the Debtors are entitled to a discharge only as permitted by Code § 1141(d)(2) and (5).

## **ARTICLE 8 - MODIFICATION OF PLAN**

This Plan may be modified in accordance with the provisions of the Bankruptcy Code and Chapter 11 as follows:

**8.1** **Pre-Confirmation**

In accordance with Code § 1127(a), the Debtors may propose the modification of the Plan in writing at any time before confirmation, provided that the Plan, as thus modified, meets the requirements of Code §§ 1122 and 1123, and the Debtors complies with Code § 1125.

**8.2** **Post-Confirmation**

In accordance with Code § 1127(b), the Plan also may be modified at any time after confirmation and before its substantial consummation, provided that a) the Plan as modified meets the requirements of Code §§ 1122 and 1123, b) the circumstances then existing justify such modification, and c) the Court confirms the Plan as thus modified under Code § 1129.

**8.3** **Effect of Modification**

Every modification of the Plan will supersede the previous version of the Plan as and when each modification is effective.  When superseded, the previous version of the Plan will be in the nature of a withdrawn or rejected settlement proposal, and will be null, void, and unusable by the Debtors or any other party for any purposes whatsoever with respect to any of the contents of such version of the Plan.

Notwithstanding anything to the contrary contained herein, the Debtors shall not be bound by estoppel, or the principles of *res judicata* or collateral estoppel, with respect to any term or provision contained herein in the event the Plan is not confirmed upon the terms and provisions set forth herein.

## ARTICLE 9 - RETENTION OF JURISDICTION

Notwithstanding the confirmation of this Plan, the Bankruptcy Court shall retain jurisdiction for all matters arising out of, or related to, the Case and this Plan, including, but not limited to all of the following matters:

a) Allowance and payment of any Claims upon any objection thereto (or other appropriate proceedings) by any party in interest entitled to proceed in that manner;

b) Determination and adjudication of any issues that arise out of or relate to a sale of any Property;

c) Determination and adjudication of any disputes that arise regarding the interpretation of any provisions of this Plan;

d) Facilitation of the consummation of this Plan by entering, consistent with the provisions of this Plan, any further necessary or appropriate orders regarding this Plan and any provisions thereof;

e) Adjudication of any causes of action or other proceedings presently pending or otherwise referenced in the Plan, including but not limited to any action regarding the initiation, prosecution, enforcement, compromise or settlement of the causes of action in the Estate, and the adjudication of any and all "core proceedings" under 28 U.S.C. § 157(b) that may be pertinent to the Case;

f) Enforcement of any provisions of the Plan and any and all documents relating to the Plan;

g) Determination and adjudication of any issues that relate to the Bankruptcy Case, and any governmental unit's Claim with respect to any tax, or any fine, interest or penalty relating to a tax; and

h) Determination of any dispute that may arise regarding the enforcement of any settlement or compromise related to the Case.

## ARTICLE 10 - RETENTION AND PROSECUTION OF CLAIMS

### 10.1    Preservation of Debtors' Claims, Demands, and Causes of Action

In accordance with Code § 1123(b)(3), all of the Debtors' claims and causes of action will a) survive the entry of the Confirmation Order and the Effective Date, b) not be discharged by the Plan, and c) become and remain part of the Debtors' Assets after the Effective Date.

## 10.2 Procedure for Determination of Claims

### 10.2.1 Disputed Claims

Except as to any Claim that has been Allowed prior to the Effective Date, on or before the sixtieth day after the Effective Date, the Debtors or any party in interest may object to the allowance of a Claim or seek estimation thereof. *See* Section 2.3 above. No payments or other distributions will be made to holders of Claims unless and until such Claims are Allowed Claims pursuant to a Final Order. If a Claim is not an Allowed Claim as of the Effective Date or when payment is otherwise due under the Plan, payment of the Allowed Claim will be made when a Claim becomes an Allowed Claim after the Effective Date or as otherwise specifically provided in the Plan.

No Claim will be an Allowed Claim until timely filed objections to its allowance are resolved. The Court shall resolve all objections at a separate hearing or hearings. **Any Claims not timely filed or Allowed shall be discharged by the Confirmation Order.** Only Allowed Claims and interests will receive distributions from the Estate. The Debtors have the right to object to any Claim where it appears that there is some dispute with regard to the Claim as filed. Unless deemed filed pursuant to Rule 3003(b), the failure to timely file a proof of Claim will result in disallowance of the Claim.

### 10.2.2 Treatment of Contingent Claims

Until such time as a contingent Claim or a contingent portion of an Allowed Claim becomes fixed or absolute or is disallowed, such Claim will be treated as a Disputed Claim for all purposes related to distributions under the Plan. The holder of a contingent Claim will only be entitled to a distribution under the Plan when and if such contingent Claim becomes an Allowed Claim.

## ARTICLE 11 - PROVISIONS GOVERNING DISTRIBUTIONS

### 11.1 Distributions by the Debtors

The Debtors will pay all Allowed Claims according to the Plan.

### 11.2 Date of Distributions

Except as otherwise provided in the Plan, or as may be ordered by the Bankruptcy

Court, distributions of cash on account of Allowed Claims as of the Effective Date will be made as of the Effective Date or as otherwise agreed by the respective parties. Authorized distributions to be made in accordance with the Plan will be deemed made as of the Effective Date if made on the Effective Date or as promptly thereafter as practicable, but in any event no later than thirty (30) days after the Effective Date. Distributions on account of Disputed Claims that are Allowed after the Effective Date will be made as provided in the Plan and if not so provided no later than thirty (30) days after entry of a Final Order allowing the Claim.

### 11.3   Delivery of Distributions

Subject to Rule 9010, distributions and deliveries to each holder of an Allowed Claim will be made at the address of such holder as set forth on the respective proof of Claim as of the Effective Date (or at the last known address of such holder if no proof of Claim is filed or if the Debtors have been notified of a change of address). If any holder's distribution is returned as undeliverable, no further distribution to such holder will be made unless and until the Debtors are notified of such holder's then-current address, at which time all missed distributions will be made to such holder without interest. The Debtors will be under no obligation to attempt to locate the holder of any Allowed Claim or to recognize any purported transfer or encumbrance on the rights of holders of Allowed Claims after the Confirmation Date. Amounts of undeliverable distributions will be retained by the Debtors until such distributions are claimed. Any Claimant that does not receive a distribution due to it being undeliverable must request payment on or before the first anniversary of the initial date of such payment. After such date, all unclaimed Property will be paid *pro rata* to the Class II General Unsecured Creditors.

### 11.4   Means of Payment

Payments made to holders of Allowed Claims pursuant to this Plan will be in United States dollars by checks drawn on the domestic bank selected by the Debtors.

### 11.5   De Minimis Cash Distributions

No cash payment of less than ten dollars ($10.00) will be made to any holder of an Allowed Claim unless a request therefore is made in writing to the Debtors.

### 11.6   Setoff

Pursuant to Code § 553 or common law rights of setoff or recoupment, the Debtors will, in the ordinary course of his affairs, set off or assert recoupment against any Allowed Claim, the Claims, rights, and causes of action of any nature that the Debtors may hold against the holder of such Claim; provided, however, that neither the failure to effect such a setoff nor the allowance of any Claim hereunder will constitute a waiver or release by the Debtors of any such Claims, rights, and causes of action that the Debtors may possess against such holder.

## ARTICLE 12 - GENERAL PROVISIONS

### 12.1 Extension of Dates

If any date set forth in this Plan, including a payment due date, falls on a day that is not a Business Day, then such date will be the next Business Day.

### 12.2 Notices

Any notice required or permitted to be provided under the Plan will be in writing and served by regular postage prepaid first-class mail, hand-delivery, facsimile, or e-mail.

### 12.3 Default

If the Debtors are unable to perform in accordance with the Plan, then they will be in default. Any Creditor may seek to enforce the Plan. <u>Before doing so, the Creditor must provide notice to the Debtors specifying the nature of the alleged default and a 30-day period to cure the default. Any notice must be in writing and sent via certified mail to the Debtors at the address on file with the Clerk of this Court and with a copy sent via certified mail to:</u>

Thomas H. Allen, Esq.
Cody D. Vandewerker, Esq.
ALLEN BARNES & JONES, PLC
1850 N. Central, Suite 1150
Phoenix, Arizona 85004

### 12.4 Closure of the Case

At such time as the Plan has been fully administered (*i.e.*, when the Plan has been substantially consummated), the Debtors will file an application for entry of a Final Decree, upon the entry of which the Case shall be deemed closed.

### 12.5 Effect of Appeal

In the event of any appeal of the Confirmation Order, and provided that no stay of the

effectiveness of such Confirmation Order has been entered, the implementation and enforcement of the Confirmation Order and the Plan according to their terms shall remain unaffected.

### 12.6 **Exculpation and Limitation of Liability**

Neither the Debtors, nor any of his respective present or former employees, advisors, attorneys, or agents, will have or incur any liability to any holder of a Claim, or any other party in interest, or any of their respective agents, employees, representatives, financial advisors, attorneys, or affiliates, or any of their successors or assigns, for any act or omission in connection with, relating to, or arising out of the Case, efforts to obtain confirmation of the Plan, the consummation of the Plan, or the administration of the Plan or the property to be distributed under the Plan, whether now known or hereafter discovered, *except for their gross negligence; willful, wanton, or intentional misconduct; or breaches of their fiduciary duties.*

### 12.7 **General Injunction**

Except as otherwise expressly provided in this Plan, the Confirmation Order shall provide, among other things, that all parties in interest who have held, hold, or may hold Claims are permanently enjoined with respect to such Claims, on and after the Effective Date, from: a) commencing or continuing in any manner any action or other proceeding of any kind; b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order; c) creating, perfecting, or enforcing any encumbrance of any kind; d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due e) conducting any form of discovery; or f) otherwise engaging in harassment. The forgoing injunction applies with regard to acts against the Debtors, their Property, successors in interest, and the property of successors in interest.

### 12.8 **Interest**

Unless set forth specifically herein, whenever interest is to be computed under the Plan, interest will be simple interest and not compounded. Unless otherwise specifically provided for in the Plan or the Confirmation Order, post-petition interest shall not accrue or be paid on Claims, and no holder of a Claim will be entitled to interest accruing on or after the Petition

{00149342}

Date on any Claim.

### 12.9    Additional Assurances

The Debtors and any party in interest holding Allowed Claims will execute such other further documents as are necessary to implement any of the provisions of the Plan.

### 12.10    Confirmation by Non-Acceptance Method

The Debtors hereby request, if necessary, confirmation of the Plan pursuant to Code § 1129(b) with respect to any Impaired Class of Claims that does not vote to accept the Plan.

### 12.11    Vesting

As of the Effective Date of the Plan, the Debtors shall retain and be vested with all of the Estate's Property. All Property shall be free and clear of all liens, Claims, and interests of Creditors and parties in interest except as specifically provided in this Plan.

### 12.12    Successors and Assigns

The rights and obligations of any Creditor or other party-in-interest referred to in the Plan will be binding upon, and will inure to the benefit of, the successors, assigns, heirs, devisees, executors, and personal representatives of such Creditor or party in interest.

### 12.13    Withdrawal of Plan

The Plan may be withdrawn by the Debtors at any time before entry of the Confirmation Order.

### 12.14    Severability and Reformation

The Debtors intend to comply fully with the Bankruptcy Code and applicable non-bankruptcy law in proposing the Plan. Therefore, if the Court determines that any Plan provision is contrary to the Bankruptcy Code or applicable non-bankruptcy law, that provision will be deemed severed and automatically deleted from the Plan if it cannot be reformed, or the provision or its interpretation will be deemed reformed to ensure compliance; provided, however, that nothing contained in this paragraph will prevent the Debtors from modifying the Plan in accordance with and as set forth in the Plan. Pursuant to any ruling by the Court regarding the subject matter of this paragraph, any such severance or reformation will be stated specifically in the Confirmation Order, which then will control notwithstanding any contrary or

inconsistent provisions of the Plan.

### 12.15 Prohibition Against Prepayment Penalties

If the Debtors so choose, in their sole and absolute discretion, to prepay any obligation on which deferred payments are provided for under the Plan, the Debtors will not be liable or subject to the assessment of any prepayment penalty thereon unless otherwise ordered by the Court.

### 12.16 Payment of Statutory Fees and Filing of Quarterly Reports

Before the Case is closed, all fees payable pursuant to 28 U.S.C. § 1980, as determined by the Court at or in conjunction with the Confirmation Hearing, will be paid on or before the Effective Date and, thereafter, in accordance with applicable bankruptcy law. The Debtors will file all quarterly reports of disbursements as required by the Bankruptcy Code.

### 12.17 Governing Law

Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by, construed, and enforced in accordance with, and subject to, the laws of the State of Arizona, excluding any laws that result in the application of the laws of another jurisdiction.

### 12.18 Special Tax Issues

The issuance, transfer, or exchange of a security as defined under the Bankruptcy Code or applicable law, or the making or delivery of any instrument of transfer under this Plan, shall not be taxed under any state or local law imposing a stamp tax or similar tax as provided in Code § 1146.

### 12.19 Conflicts Between Plan and Confirmation Order

In the event the terms of this Plan and the Confirmation Order conflict, the terms of the Confirmation Order shall govern.

RESPECTFULLY SUBMITTED this 5th day of March, 2019.

/s/ *Phillip J. Hoolehan*
Phillip J. Hoolehan

/ / /

**APPROVED AS TO FORM AND CONTENT:**

**ALLEN BARNES & JONES, PLC**

By: /s/ *THA #11160*
   Thomas H. Allen
   Cody D. Vandewerker
   1850 N. Central Avenue, Suite 1150
   Phoenix, Arizona 85004
   Attorneys for Debtors